*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *JANINE KIMBALL,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Docket No. 07-115-B-W |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question whether the commissioner supportably determined that the plaintiff, who alleges disability stemming from ulnar-nerve neuropathy, failed to meet her burden of proving that she had a medically determinable impairment. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the objective medical evidence failed to establish the existence of a medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms, Finding 3, Record at 16; and that she therefore had

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on February 12, 2008 pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

not been under a disability as defined in the Social Security Act at any time through the date of decision (January 22, 2007), Finding 4, *id*. at 18.[2] The Appeals Council declined to review the decision, *id*. at 5-9, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential-evaluation process. The claimant bears the burden of proof at Step 2, although it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

The plaintiff asserts that the administrative law judge erred in finding that she had no medically determinable impairment. *See generally* Statement of Specific Errors ("Statement of

---

[2] The administrative law judge should have considered whether the plaintiff had been disabled at any time through the date her insured status expired on December 31, 2005. *See* Finding 1, Record at 16. However, nothing turns on the error.

Errors") (Docket No. 6).  I find no error.

## I. Discussion

The plaintiff, whom the Record reveals first complained to a family nurse practitioner of right-arm pain with numbness and tingling in the fourth and fifth fingers in February 1999, *see* Record at 265, and who has submitted a letter from a treating source, P. Gregory Askins, M.D., opining that she is permanently disabled by pain in both upper extremities, *see id.* at 194, assails the administrative law judge's Step 2 finding on a number of fronts, *see generally* Statement of Errors.

I conclude that (i) the Record contains conflicting evidence concerning whether the plaintiff had a medically determinable impairment, (ii) the administrative law judge was entitled to resolve those conflicts and did resolve them, *see Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."), and (iii) his decision is supported by substantial evidence.[3]

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical

---

[3] At oral argument, counsel for the commissioner contended that, in holding that the objective medical evidence failed to establish the existence of a medically determinable impairment "that could reasonably be expected to produce the claimant's symptoms," Finding 3, Record at 16, the administrative law judge essentially found that the plaintiff did have ulnar neuropathy but that the impairment was non-severe.  He posited that this finding – that the ulnar-neuropathy impairment imposed no severe restrictions – was supported by substantial evidence of record.  In so arguing, counsel mischaracterized the decision he sought to defend.  The administrative law judge found that the plaintiff had fallen short of demonstrating the existence of a medically determinable impairment; hence, he did not reach the issue of the degree of limitation (if any) such a condition might have imposed.  *See id*. at 15-18.  In these circumstances, the court cannot consider itself bound by the representation (or even the concession) of counsel for the commissioner: Its job is to review the decision actually rendered.  *See, e.g., Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [courts'] review to the reasons supplied by the ALJ.  That is why the ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to her conclusion.") (citations and internal quotation marks omitted).  Hence, I have proceeded to consider whether the decision actually made – that no medically determinable impairment was shown – was supported by substantial evidence.

signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2007) ("SSR 96-7p"), at 133. "[S]ymptoms, such as pain, fatigue, shortness of breath, weakness or nervousness, are an individual's own perception or description of the impact of his or her physical or mental impairment(s). . . . However, when any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" Social Security Ruling 96-4p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2007) ("SSR 96-7p"), at 120 n.2; *see also* 20 C.F.R. § 404.1528(a)-(b).

The Record contains conflicting evidence on the question whether the plaintiff has established the existence of a medically determinable impairment. Dr. Askins, a hand surgeon who treated the plaintiff's hand and arm conditions from 1999 through 2001 and 2004 through 2006, *see, e.g*., Record at 284, 328, wrote a letter to the Finance Authority of Maine dated December 17, 2004 in which he stated: "I do not believe that Janine Kimball will be able to return to work because of ongoing pain in both upper extremities. She tried to return back to work and was unable to do so because of escalating symptoms. I believe that this disability will be permanent[,]" *id*. at 194. Dr. Askins had referred the plaintiff for electrodiagnostic ulnar-nerve testing both in 1999, after she first consulted him, and again in 2005. *See, e.g., id*. at 283-84, 212-14. In both cases, the testing was negative. *See, e.g., id*. Yet Dr. Askins continued to note certain findings on physical examination; for example, on March 22, 1999 he noted, *inter alia*, a positive Tinel sign over the ulnar nerve in the ulnar groove bilaterally; a positive elbow-flexion test bilaterally; diminished sensation in ulnar digits in the right hand; and a Phalen

maneuver resulting in paresthesias in the ring and little fingers. *See id*. at 284.[4] Peter J. Morin, M.D., Ph.D., a neurologist to whom Dr. Askins referred the plaintiff for consultative examinations, also noted in a letter dated January 13, 2000 that he had the impression she suffered from bilateral ulnar neuropathies, although the cause had "not been clarified by diagnostic studies[.]" *Id*. at 237.

In a report dated February 15, 2000 Michael W. Mainen, M.D., who examined the plaintiff in connection with a workers' compensation claim she had made, concluded:

> The sensory disturbances in the hands generally fit an ulnar distribution. If that were the only symptom I think a diagnosis of ulnar neuritis might be worth entertaining. But that diagnosis would not explain wrist pain or the tenderness over widespread areas from the elbow distally. . . . It is far more likely that this is a non-organic pain syndrome, and I cannot rule out malingering, though I have no evidence of it. If this patient's symptoms are not driven by secondary gain, then I believe they are primarily hysteric. I do not believe that they are explainable by any diagnosable physical condition.

*Id*. at 249. Dr. Askins reviewed and disagreed with Dr. Mainen's report; he noted that he continued to believe that the plaintiff suffered from ulnar neuritis in both upper extremities. *See, e.g., id*. at 273. In the wake of the Mainen report, the plaintiff arranged for a consultative examination by a psychiatrist, Sally R. Weiss, M.D., who opined that the plaintiff was neither a malingerer nor suffering from a hysteric condition. *See id.* at 266-68.

In an EMG report dated June 6, 2005, James W. Sears, M.D., noted certain positive findings on physical examination, including provocation of numbness and some elbow discomfort by a Phalen maneuver and a Tinel sign at both elbows. *See id*. at 213. He summarized:

---

[4] A Tinel sign is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve." Stedman's Medical Dictionary 1640 (27th ed. 2000). In a Phalen maneuver, "the wrist is maintained in volar flexion; paresthesia occurring in the distribution of the median nerve within 60 sec may be indicative of carpal tunnel syndrome." *Id*. at 1061.

> The patient's history and examination would be consistent with ulnar neuropathy and with the elbow tenderness and elbow location certainly would be a suspicion.
>
> The study demonstrates no evidence of significant ulnar neuropathy by nerve conduction or EMG criteria, which would be a positive indicator in this setting. This would portend a positive prognosis with conservative therapy.

*Id*. at 214.

In his most recent progress report of record, dated April 28, 2006, Dr. Askins continued to note a positive Tinel sign in both elbows and an elbow-flexion test resulting in parasthesias. *See id.* at 306. While he found that the plaintiff's median-nerve-related symptoms had resolved, he noted that she continued to have baseline ulnar-nerve symptoms. *See id*.

The Record contains several Residual Functional Capacity ("RFC") reports by non-examining Disability Determination Services ("DDS") medical consultants. One, Richard Chamberlin, M.D., concluded in a report dated December 21, 2004 that the plaintiff's alleged symptoms were attributable to a medically determinable impairment, bilateral ulnar neuropathy. *See id*. at 201. A second consultant, Lawrence P. Johnson, M.D., found in a report dated October 25, 2001 that the plaintiff had no "MDI," or medically determinable impairment, that would result in the alleged limitations. *See id*. at 290. In a later report, dated March 7, 2005, Dr. Johnson evidently concluded that the plaintiff did have a medically determinable impairment but found that it imposed no limitations whatsoever. *See id*. at 205-11. A third DDS consultant, James H. Hall, M.D., concluded in an RFC report dated May 25, 2001 that the plaintiff had no medically determinable impairment. *See id*. at 298. Finally, Franklin Plotkin, M.D., a medical expert who appeared at the plaintiff's hearing (held on December 6, 2006), testified that the medical evidence of record did not establish the existence of a medically determinable diagnosis. *See id*. at 337. He explained this was so on the basis of her negative nerve-conduction and EMG tests, which he described as "[t]he normal way of establishing ulnar neuritis or any other

neuritis[.]." *Id*. at 338. He found it surprising, given the five-year duration of the plaintiff's condition, that the second round of electrodiagnostic testing revealed no objective changes. *See id*. at 340. He noted that the conservative course of treatment the plaintiff had undergone was consistent with lack of objective corroboration of her symptoms. *See id.* at 338.

The administrative law judge rejected Dr. Askins' opinion that the plaintiff was disabled, reasoning that:

> [T]he opinion was prepared in support of a claim to relieve the claimant of a financial obligation (claimant's testimony), it simply accepts the claimant's self-assessment of her condition, it is apparently contradicted by his subsequent treatment note that the claimant's condition had resolved (Exhibit 15F/April 28, 2006), it is contradicted by the claimant's inconsistent medical treatment despite timely access to medical insurance, it is not supported by reference to objective medical evidence, it is contradicted by the claimant's conservative course of treatment, and it is contradicted by the opinions of reviewing medical experts (Exhibits 3F, 14F, independent testifying medical expert).[5]

*Id*. at 17. He expressly adopted the opinion of Drs. Hall and Plotkin that the plaintiff had no medically determinable impairment, noting that Dr. Hall had "made a careful review of the then available medical evidence," Dr. Plotkin "had the benefit of a longitudinal study of the record evidence[,]" and the findings of both experts were well-supported and consistent with the record as a whole. *Id*. at 17-18.

The plaintiff attacks this finding on a number of fronts, pointing out that:

1.      More than five years elapsed between the date of Dr. Hall's RFC report and the plaintiff's hearing, and Dr. Hall did not have the benefit of review of Dr. Askins' records from 2004 through 2006 or Dr. Sears' EMG report. *See* Statement of Errors at 2.

2.      Neither Dr. Hall nor Dr. Plotkin examined the plaintiff. *See id*.

---

[5] Exhibit 15F contains Dr. Askins' April 28, 2006 progress note. *See* Record at 3, 306. Exhibit 3F is Dr. Johnson's March 7, 2005 RFC report. *See id*. at 3. Exhibit 14F is Dr. Hall's May 25, 2001 RFC report. *See id.*

  3. Dr. Askins has not wavered in his repeated diagnosis of ulnar neuritis. *See id*.

  4. The administrative law judge failed to address Dr. Morin's report. *See id*. at 2-3.

  5. Dr. Mainen's conclusion that the plaintiff's symptoms likely were attributable to hysteria was debunked by Dr. Weiss. *See id*. at 3.

  6. In rejecting Dr. Askins' report, the administrative law judge mischaracterized him as having found that the plaintiff's condition had resolved, when in fact Dr. Askins stated that her median-nerve-related symptoms had resolved but she continued to have baseline-ulnar-nerve symptoms. *See id*.

  7. The administrative law judge unreasonably rejected the Askins opinion on the basis that Dr. Askins wrote a letter to relieve the plaintiff of a financial obligation when Dr. Askins merely completed a portion of an application dealing with the plaintiff's ability to work. *See id*. at 4.

  8. Both Drs. Morin and Askins produced significant medical signs, based on their own examinations, in support of their diagnoses, including positive Tinel signs and tenderness to palpation. *See id*. Per the commissioner's regulations, the existence of an impairment need not necessarily be established by diagnostic testing; medical signs also are acceptable. *See id*. at 4-5. Both Dr. Plotkin and the administrative law judge inappropriately relied solely upon diagnostic testing, ignoring positive signs found by the plaintiff's doctors. *See id*. at 5.

  In the circumstances, these points amount to nitpicks with the manner in which the administrative law judge resolved conflicts in the evidence. As concerns his decision to adopt the opinions of Drs. Hall and Plotkin, the First Circuit has made clear that, in appropriate circumstances, the opinion of a non-examining consultant can constitute "substantial evidence" in support of an administrative law judge's finding. *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18

(1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

While Dr. Hall's report was five years old, it was not stale. The materials postdating the Hall report – Dr. Askins' records from 2004 through 2006 and Dr. Sears' 2005 EMG report – are cumulative of materials Dr. Hall did review that bore on the question whether the plaintiff had a medically determinable impairment. Like Dr. Askins' earlier records (seen by Dr. Hall), the later records revealed negative electrodiagnostic test results but certain positive findings on physical examination (such as tenderness, positive Tinel signs, positive responses to the Phalen maneuver). *Compare, e.g., id*. at 272-84 (older Askins records) *with id*. at 194-95, 306-09 (newer Askins records), 212-14 (Sears report). Dr. Plotkin, who did have the benefit of review of the later materials, reached the same conclusion as Dr. Hall had in 2001 that there was no medically determinable impairment. *See id*. at 337-38. There is no reason to believe that review of the newer materials would have altered Dr. Hall's assessment of the case.

Nor does the plaintiff make a persuasive case that the weight of Dr. Plotkin's evidence (and the administrative law judge's decision) is undermined by a bull-headed insistence on diagnostic testing. Dr. Plotkin's testimony indicates that he was well aware of the positive physical findings noted by Dr. Askins and others (such as tenderness to palpation, positive Tinel signs). *See id*. at 338-39, 343-44, 347. He explained that, while in the past ulnar neuritis or neuropathy had been diagnosed by physical examination, the state of the art now is to diagnose it by way of nerve-conduction and EMG tests. *See id*. at 338, 340. He found it particularly

surprising that the second set of diagnostic tests again was negative given the five-year course of the plaintiff's symptoms. *See id.* at 340. Even Dr. Morin, on whose report the plaintiff partly relies, *see* Statement of Errors at 2-3, 5, noted that the cause of the plaintiff's ulnar neuropathy had not been clarified by diagnostic studies, *see* Record at 237. This therefore is not a case of misapprehension of the substance of the regulations – which permit establishment of the existence of a medically determinable impairment by, *inter alia*, medical "signs," 20 C.F.R. § 404.1528(b) – but rather of reasonable disagreement among experts as to the level and type of findings necessary to diagnose this particular disorder.[6]

I likewise find no fault in the administrative law judge's handling of Dr. Askins' disability opinion. Dr. Askins' opinion bears on the subject of whether or not the plaintiff was "disabled" for purposes of eligibility for SSD benefits. As regards determinations reserved to the commissioner (which include the ultimate question of disability), even opinions of a treating source are accorded no "special significance." *See* 20 C.F.R. § 404.1527(e)(1)-(3). An administrative law judge is free to reject such an opinion, although he or she must "give good reasons in [the commissioner's] notice of determination or decision for the weight we give your treating source's opinion." *Id.* § 404.1527(d)(2). The administrative law judge did just that, supplying a number of reasons for rejecting the Askins opinion. *See* Record at 17. The plaintiff

---

[6] At oral argument, the plaintiff's counsel also pointed to a New England Journal of Medicine article included in the Record. He presumably referred to three pages contained at pages 184-86, consisting of one page containing letters to the editor on the subject of "Entrapment Neuropathies of the Upper Extremities" and two pages regarding "Ulnar Neuropathy at the Elbow." *See* Record at 184-86. One of the letters to the editor (the entirety of which is not reproduced) suggests that there is indeed a debate among experts as to the role of diagnostic testing in establishing the existence of these types of neuropathies. *See id.* at 184 (taking issue with conclusion of a Dr. Dawson that "electrodiagnostic testing is important for the accurate diagnosis of carpal tunnel syndrome and should be carried out in most cases") (internal quotation marks omitted). The two-page article states that a normal diagnostic test does not rule out the existence of ulnar neuropathy inasmuch as, in the writer's experience, twenty to forty percent of patients with surgical lesions have a negative test. *See id*. at 185-86. It is unclear who authored the article; in any event, the article represents one practitioner's opinion. The administrative law judge was not required to accept its conclusion in the face of conflicting expert evidence on the point.

challenges the factual underpinnings of one of the reasons given and the reasonableness of a second reason supplied, *see* Statement of Errors at 3-4; however, even assuming *arguendo* that those can be characterized as "poor" reasons for declining to embrace Dr. Askins' opinion, the plaintiff does not challenge the handful of additional reasons articulated in support of its rejection, *see id.*; *see also* Record at 17.

The Mainen report is of no consequence. The administrative law judge did not expressly rely on it, *see* Record at 16-18, and, in any event, it is not a critical piece of evidence. The Step 2 decision remains supported by substantial evidence without it.

While it is true that the administrative law judge did not discuss the Morin report, *see id.* at 16-18, the plaintiff's counsel clarified at oral argument that his client does not contend that the failure to mention the report, standing alone, constitutes error. In any event, Dr. Morin's conclusions regarding the existence of a medically determinable impairment are not materially different from those of Dr. Askins, whose records expressly were taken into consideration in resolving the conflict among experts on the question.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 14th day of February, 2008.

                                                                     /s/ David M. Cohen  
                                                                      David M. Cohen  
                                                                      United States Magistrate Judge